Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5439 | **DATE** | 1/16/2002 |
| **CASE TITLE** | Blakely vs. Brach & Brock Confections, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment is granted. Accordingly, judgment is entered in favor of defendant and against plaintiff. Any pending motion in this case is terminated as moot. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 17 2002 | |
| | Notified counsel by telephone. | | date docketed | 51 |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | 1/16/2002 | |
| | Copy to judge/magistrate judge. | FILED | date mailed notice | |
| MPJ | courtroom deputy's initials | 02 JAN 16 PM 5:17 | MPJ mailing deputy initials | |
| | Date/time received in central Clerk's Office | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL H. BLAKELY,           )
                              )
            Plaintiff,        )
                              )
      v.                      )
                              )   No. 99 C 5439
BRACH & BROCK CONFECTIONS,    )
INC.,                         )
                              )
            Defendant.        )

DOCKETED
JAN 17 2002

## MEMORANDUM OPINION AND ORDER

Michael Blakely was employed as an inventory analyst by Brach & Brock Confections, Inc. ("Brach"), in its Chicago, Illinois, distribution department. He was fired on January 11, 1999, for insubordination and performance deficiencies. After receiving a right to sue letter from the EEOC, he filed this complaint alleging race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, and 42 U.S.C. § 1981, disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq., and a state cause of action for intentional infliction of emotional distress. Brach moves for summary judgment on all counts, and I grant the motion.

I.

After serving as a temporary employee for Brach, Michael Blakely, an African-American man, was hired as a permanent employee of the distribution department in March 1998. He was responsible for coordinating product shipments from Brach's various warehouses

with the customer service department, which is in Chattanooga, Tennessee. Art Jalove was the head of the distribution department while Blakely was employed there, and Blakely's immediate supervisor, Russ Schroeder, reported to Jalove. While Blakely was working for Brach, he was being treated for Grave's Disease, which is a thyroid condition.

Blakely was trained by other analysts when he first began working at Brach. In July 1998, Schroeder, Blakely's immediate supervisor, talked to Blakely about problems with his work, including trouble meeting deadlines and waiting so long to perform some of his duties that he held up the shipping process, but Schroeder said that he did not see any improvement in Blakely's performance after talking to him. On September 3, 1998, Blakely received a "needs improvement" rating on his performance evaluation. Among the comments were that Blakely lacked initiative and rarely followed up on or checked his own work, required constant monitoring, was not reliable in completing assigned and daily tasks, and had little regard for teamwork. The same day, Blakely wrote a memorandum stating that he strongly disagreed with the appraisal, and followed it up with a detailed response memorandum on September 8, 1998.

Before his evaluation, in July 1998, Blakely had received a racially offensive e-mail from a co-worker and had complained to his supervisors. In the September 8 memorandum about his

evaluation, Blakley also complained about the e-mail, mistreatment by other co-workers who called him "dumb" and "stupid," and about his medical condition. He had several meetings with his supervisors about his evaluation and grievances, but, unsatisfied by their response, he filed an EEOC charge on November 5, 1998, alleging race and disability discrimination and retaliation. Blakely says that, after his supervisors became aware that he filed his EEOC charge, they retaliated against him by: denying him a promised performance review; drafting a "poison pen" memorandum in December listing (and, Blakely claims, exaggerating) problems with Blakely's performance and attendance going back to his review on September 3, 1998; sending him an attendance warning that admonished him for leaving early and arriving late without considering whether his absences were for medical appointments; baiting him into a confrontation about vacation days under false pretenses; and stating that, where Blakely's discrimination claim was concerned, that "enough is enough."

On the afternoon of January 11, 1999, Jalove met with Dennis Donnellan, a representative of Brach's human resources department, and Blakely to discuss his work load and performance and the problems that he had been having at work. Prior to the meeting, Jalove says he had no intention of firing Blakely because of the problems with his performance. During the meeting, Jalove went over Blakely's responsibilities and asked him if he understood his

duties and was willing to perform the job as described. Blakely said that he was. Jalove asked him if there were any issues he wanted to discuss, and Blakely responded that he did not want to discuss his pending EEOC charge without his lawyer present. He assumed the meeting was over and got up to leave. Jalove told him the meeting was not over and yelled at him to sit down, and Donnellan said that it might be considered insubordination if he left the meeting. Blakely says that neither Jalove or Donnellan said anything after that, and that the three of them were just staring at each other, so he concluded that the meeting was over and left.

After Blakely walked out, Jalove and Donnellan decided to fire Blakely for his insubordination and performance problems. Blakely had gone back to his desk and was getting ready to leave for a doctor's appointment. Jalove approached him and asked him to return to his office, but when Blakely refused because he was on his way out, Jalove fired him in the hallway, took his I.D. card and had him escorted out by a security guard. Blakely filed this lawsuit after receiving a right to sue letter from the EEOC.

Summary judgment is proper when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to

4

the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001).

II. Race Discrimination

A. Disparate treatment

"While section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *Von Zuckerstein v. Argonne Nat. Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993). "A plaintiff bringing suit under section 1981 or Title VII can meet his burden of proof for establishing intentional discrimination either through direct proof of discriminatory intent, or through the indirect, burden-shifting method of proof first elaborated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Id.* (citations omitted). There is no direct evidence of race discrimination here, so Blakely proceeds under *McDonnell Douglas*.

To establish a prima facie case for race discrimination, Blakely must show that he: (1) belongs to a protected class, (2) performed his job according to his employer's legitimate expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than other similarly situated employees

5

outside the protected class.[1] *Curry v. Menard, Inc.*, 270 F.3d 473, 477 (7th Cir. 2001). "Establishing a prima facie case creates a presumption of discrimination and shifts the burden to the employer to produce evidence of a legitimate, race-neutral reason for the adverse action." *Id.* "If the employer meets this burden of production, the plaintiff then has the burden to show that the stated nondiscriminatory reason is pretextual." *Id.*

To avoid summary judgment, Blakely must come forward with evidence that demonstrates there is a material question of fact for trial as to *each* element of the prima facie case. *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). There is no dispute about elements (1) and (3), but Brach claims that it is entitled to judgment on the basis of elements (2) and (4). Blakely's race discrimination claim fails because he does not satisfy the "similarly situated" element of the prima facie case. In his affidavit, Blakely states that, although Schroeder approached him before his performance review about problems or concerns with some of his work, he observed Schroeder having

---

[1] Brach suggests that the "similarly situated" element is not satisfied in a discharge case if Brach did not attempt to replace Blakely. *See Flores v. Preferred Tech. Group*, 182 F.3d 512, 515 (7th Cir. 1999). *Flores* also involved a termination for insubordination, but the court held that the "linchpin" of the prima facie case is "evidence of disparate treatment between members of the plaintiff's protected class and nonmembers." *Id.* at 514. Blakely suggests that the departmental reorganization several months after his termination is evidence that he was replaced, but here that provides no evidence or inference of disparate treatment.

6

similar conversations with "virtually all of the other analysts." Blakely Aff. ¶ 9. But he does not identify the race of the other analysts, whether their overall performance was comparable to his, or whether they were fired for unsatisfactory performance. He does not dispute that he received the worst evaluation of all of the analysts supervised by Schroeder. Plaintiff's Response to Material Facts ¶ 38. Because he cannot demonstrate that non-African American employees with the same documented performance problems were treated differently, he has failed to meet his initial burden under the *McDonnell Douglas* method, *see McPhaul v. Board of Comm'rs of Madison County*, 226 F.3d 558, 565 & n.3 (7th Cir. 2000) (Co-workers with better performance evaluations were not "similarly situated" in Equal Protection context where termination was based on performance deficiency.), and I need not consider whether the termination for performance was a pretext for discrimination. *See Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 445 (7th Cir. 1997) (declining to address pretext where plaintiff failed to establish prima facie case).

Blakely fares no better with the charge of insubordination, Brach's other reason for terminating him. Blakely says that the details of the January 11, 1999, meeting are "highly disputed." But even on Blakely's own version of the events, he "assumed the meeting was over," got up to leave and Jalove told him to sit down. Blakely Aff. ¶ 15. He turned around to see what Jalove wanted, and

7

Donnellan told him that it might be considered insubordination if he left the meeting. *Id.* Blakely says "we were all just staring at each other saying nothing" and that he "concluded that the meeting was really over and left." *Id.* It is undisputed that Donnellan told him that leaving could be considered insubordination, and that Blakely left anyway. Donnellan testified that Blakely's insubordination alone was grounds for firing him, Donnellan Dep. at 119, and Blakely does not dispute this. Donnellan also said in his affidavit that he was not aware that there was any other employee who had acted the way Blakely did, and was not fired for it. To satisfy the "similarly situated" prong of the prima facie case, Blakely would have to come forward with evidence that non-African American employees who had engaged in insubordination or misconduct of "comparable seriousness" had not been fired, *Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 561 (7th Cir. 1998), but he does not do so. Because Blakely has not come forward with any evidence from which a reasonable jury could conclude that he was treated less favorably than similarly situated non-African American employees, I need not reach the question of whether Blakely was meeting Brach's legitimate performance expectations, or whether Brach's proffered reasons for firing him were a pretext for discrimination. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997) (The "prima facie case is the condition precedent to pretext analysis.").

8

## B. Harassment

"In order to be actionable under Title VII, a plaintiff's work environment must be both objectively and subjectively offensive." *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 641 (7th Cir. 2001). "Whether a work environment is hostile depends on 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Here Blakely bases his harassment claim on (1) a July 1998 e-mail from a co-worker that began "You know you are a GHETTO corporate Negro if . . ." and listed several pejorative racial stereotypes, Jalove Dep. Ex. 1, and (2) the actions of two co-workers, who called him "dumb" and "stupid" and were generally uncooperative in a way that made it hard for Blakely to do his job. "Race-neutral verbal abuse" is not actionable under Title VII, *see Rodgers v. Western-S. Life Ins. Co.*, 12 F.3d 668, 676 (7th Cir. 1993) (Plaintiff "would not have an action under Title VII if [the harasser] had not mixed racist comments into his daily routine of race-neutral verbal abuse."); *Hardin v. S.C. Johnson & Son, Inc.*,

9

167 F.3d 340, 345-46 (7th Cir. 1999) (holding that "persistent cursing and use of abusive language" was not racial harassment where there was nothing "inherently . . . racial" about the comments); *Williams v. Caterpillar Inc.*, No. 89 C 8581, 1991 WL 113189, at *3 (N.D. Ill. June 20, 1991) (Shadur, J.) (holding that, without evidence of race motivation, merely calling African American plaintiff "dumb, stupid idiot," even if same language was not directed to white employees, was racially neutral), so the comments by his co-workers cannot form the basis of a harassment claim.

"In hostile work environment cases, the employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1048 (7th Cir. 2000). Jalove testified that, after Blakely complained to him about the racist e-mail, he reprimanded the employee who sent it and told her that e-mail was for business purposes, and certainly not for sending racially or sexually offensive jokes. Jalove Dep. at 18-19. Blakely objects that the content of the conversation is hearsay; Brach does not respond to this objection. Nevertheless, I need not decide whether the contents of the conversation are admissible,[2] or, if so, whether

---

[2] Jalove's statements are at least arguably offered not for the truth of the matter asserted, but to show the effect on the listener, or merely that the reprimand occurred.

10

Brach's response was sufficient, because the e-mail is an isolated incident that is insufficient to support a claim for harassment under Title VII. *See Faragher*, 524 U.S. at 788 (holding that, in sex discrimination claim, "sporadic use of abusive language, gender-related jokes, and occasional teasing" are not actionable). I grant summary judgment for Brach on the race discrimination claims.

### III. Retaliation

To establish a prima facie case of retaliation under Title VII, Blakely must establish that (1) he engaged in "statutorily protected expression" (*i.e.*, reporting or otherwise opposing conduct prohibited by Title VII, such as racial harassment), (2) he suffered an adverse, job-related action by Brach, and (3) there is causal link between his opposition to unlawful discrimination and his termination. *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1146 (7th Cir. 1997). Brach does not dispute that Blakely engaged in statutorily protected expression when he filed his EEOC complaint on November 5, 1998, or that he suffered an adverse employment action when he was fired on January 11, 1999, but it argues that there is no evidence of any connection between the two events. "Speculation based on suspicious timing alone . . . does not support a reasonable inference of retaliation; instead, plaintiff[] must produce facts which somehow tie the adverse decision to the plaintiff['s] protected actions." *Sauzek v. Exxon Coal USA, Inc.*,

11

202 F.3d 913, 918 (7th Cir. 2000). Brach says that the only thing tying Blakely's termination to his EEOC complaint is the less-than-two-month period between Jalove's discovery of the EEOC complaint on November 23, 1998, and Blakely's termination on January 11, 1999.

Blakely claims that, beginning in December 1998, he was the target of a smear campaign by Brach. At his review in September 1998, he says he was promised that he would be reevaluated in a couple of months, and that he was denied the review. Schroeder Dep. at 87-88. But Schroeder testified only that no review happened because of all the problems that Blakely was having getting work done and following through on assignments. *Id.* Jalove drafted a memorandum on December 23, 1998, detailing Blakely's alleged misconduct going back to his performance evaluation on September 3, 1998. Jalove Dep. Ex. 12. Blakely calls this a "poison pen" memorandum, says that many of the incidents are exaggerated, and says that it is evidence that they were "creating a file" on him, but even if that is true, the memorandum does not mention his grievances, so there is nothing but suspicious timing to connect the memo to his EEOC charge.

Blakely received an attendance warning from Schroeder stating that, in September and October, he arrived late or left early twenty-four times. Schroeder Dep. Ex. 17. Blakely says he received the warning in January, but it is not dated, and Schroeder

12

testified only that he delivered it to Blakely, and to all other employees with attendance problems, "sometime before his termination." Schroeder Dep. at 100. Because there is no evidence of when the warning was given, not even the timing provides an inference of retaliation. Blakely also says that Jalove and Schroeder tried to "bait" him into a confrontation about vacation days on January 11, 1999, in order to get him to quit, but he does not point to any evidence to support this claim. Donnellan testified that Jalove was wrong as a matter of company policy; as an exempt employee, Blakely was not required to choose between a vacation day and a day without pay if he missed a half day due to inclement weather. Donnellan Dep. at 95-97. But there is no evidence that Jalove and Schroeder knew that they were wrong when they made the request.

Finally, Blakely says that Jalove was "hostile" to his ongoing discrimination and harassment claims. The evidence he cites in support of this is Jalove's statement at his deposition, in the context of Blakely's discrimination claim, that "enough is enough." Jalove Dep. at 119. What Jalove actually said was that, in addition to discussing Blakely's performance problems, the purpose of the January 11 meeting was to:

> try and . . . understand what these harassments and . . . problems that Mike had, as well as the medical, to try and get a better understanding and get to the bottom of this so that we didn't keep bouncing back and forth, and, you know, having problems and delay of time.
> You know, it was more, enough is enough. Let's get to

13

the final bottom and understand.

*Id.* at 118-19. In context, no reasonable jury could interpret Jalove's statement as "hostile" to Blakely's EEOC charge; he only said that he wanted to understand and "get to the bottom" of the charges. Blakely cannot create an issue of fact for trial by taking Jalove's statement out of context. *Taylor v. Monsanto Co.*, 150 F.3d 806, 810 (7th Cir. 1998). Viewed in its totality and most favorably to Blakely, the evidence shows that the only thing connecting his termination to his EEOC charge is suspicious timing, which standing alone is insufficient to withstand summary judgment on his retaliation claim. *See Sauzek*, 202 F.3d at 918 (three month gap alone could not establish causal connection).

## IV. ADA

Blakely has Grave's Disease, which is a thyroid condition, and he claims that Brach discriminated against him on the basis of his disease. To establish a prima facie case of disability discrimination, Blakely must show that (1) he is a qualified individual with a disability; (2) his work performance met Brach's legitimate expectations; (3) he was terminated; and (4) his disability was the motivation for his termination. *Weigel v. Target Stores*, 122 F.3d 461, 465 (7th Cir. 1997). Brach argues that Blakely does not have a "disability" as it is defined by the statute. A "disability" under the ADA is a physical or mental impairment that substantially limits a major life activity, a

14

record of such an impairment, or evidence that an employee is regarded by his employer as having such an impairment. 42 U.S.C. § 12112(a); *Gorbitz v. Corvilla, Inc.*, 196 F.3d 879, 882 (7th Cir. 1999). Brach argues that Blakely was not actually disabled, and Blakely does not argue that he is. Instead, he proceeds under the "regarded as" definition, which requires him to demonstrate that Brach thought that his Grave's Disease substantially limited a major life activity.

Blakely comes forward with three statements by Jalove at September 25, 1998, meeting to support his claim that Brach regarded him as disabled: (1) an insensitive comment about facial disfigurement caused by his disease; (2) a request for a doctor's note to support his claim that his condition did not allow him to work more than eight hours a day; and (3) a statement that Blakely should look for work in a less "stressful" department. (1) When Blakely complained that co-workers were calling him "dumb" and "stupid," Jalove asked him if he would consider it harassment if they called him "handsome," implying that he was not. Blakely Aff. ¶8. (Bugling eyes, profuse sweating, and frowning or scowling are side effects of Grave's Disease. *Id.*). This was cruel and insensitive, and shows that Jalove was aware of Blakely's condition, but even drawing all inferences in favor of Blakely, it does not support an inference that Jalove believed that he was substantially limited in any major life activity.

15

(2) When Blakely said that he was unable to work eight hour days in a stressful environment because of his condition, Jalove asked him to provide a doctor's note to verify the claim. Blakely Aff. ¶ 8. Blakely says that the request for documentation, even when there was no pending request for a reasonable accommodation, shows that he was perceived as disabled, and he cites *Tice v. Centre Area Transportation Authority*, 247 F.3d 506 (3d Cir. 2001), in support. But *Tice* held, precisely to the contrary, that a "request for a medical examination, standing alone, is not sufficient to establish that the employer 'regarded' the employee as disabled." *Id.* at 508-509. Even so, the particular request here--for proof that Blakely could not work eight hour days--does not support an inference that Jalove believed he was substantially limited; in fact, it supports the opposite inference: that Jalove wanted proof because he did not believe that Blakely was limited.

(3) However, Jalove's comment that Blakely should seek work in a less stressful department supports an inference that he believed Blakely was limited somehow by his condition. Nevertheless, a mere limitation is not enough to constitute a disability; there must be a *substantial* limitation. "'[A]n inability to perform a particular job for a particular employer' is insufficient to establish substantial limitation. Instead, 'the impairment must substantially limit employment generally.'" *Sinkler v. Midwest Property Mgmt. Ltd. P'ship*, 209 F.3d 678, 685 (7th Cir. 2000) (citations omitted).

16

I need not reach the question of whether Jalove regarded Blakely's limitation as substantial, however, because even if he did, there is no evidence that Blakely's disability was a motivating factor of his discharge. It is not enough that Jalove was aware of a disability, even if he thought about it in discriminatory terms; the termination must have been *because of* his disability. *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1033 (7th Cir. 1999). Jalove's statement occurred nearly four months before Blakely was fired, and there is no evidence that he repeated that sentiment, or still perceived Blakely as disabled, when he was fired. "[C]ausation is one of the explicitly articulated elements of a prima facie case of disparate treatment disability discrimination," *id.* at 1032 n.5, and without evidence to support it, Blakely cannot survive summary judgment on his ADA claim.

V. Intentional Infliction of Emotional Distress

Brach argues that Blakely's state law claim for intentional infliction of emotional distress is preempted by the Illinois Human Rights Act, 775 ILCS 5/8-111(c), *see Krocka v. City of Chicago*, 203 F.3d 507, 516-17 (7th Cir. 2000) (upholding dismissal of preempted claim under Fed. R. Civ. P. 12(b)(6)), and that the Illinois Human Rights Commission has exclusive jurisdiction over claims arising under the Act, *Talley v. Washington Inventory Serv.*, 37 F.3d 310, 311 (7th Cir. 1994) (citing *Mein v. Masonite Corp.*, 485 N.E.2d 312 (Ill. 1985)). Blakely does not respond, so he has

waived any argument in opposition. *Arendt v. Vetta Sports, Inc.*, 99 F.3d 231, 237 (7th Cir. 1996) (Failure to respond to arguments in response to summary judgment motion results in waiver).

I GRANT Brach's motion for summary judgment on all claims.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: January 16, 2002